**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DONNA ROCHELL HYDER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:19-cv-00976-O-BP** |
| | § | |
| **ANDREW SAUL,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Donna Rochell Hyder ("Hyder") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.    STATEMENT OF THE CASE**

Hyder was born on August 20, 1968 and has a high school education. *See* Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 10-1 at 33. She applied for DIB on December 5, 2016, alleging that her disability began on November 25, 2015. Tr. 19. When she applied, she was forty-seven years old, which is defined as a younger individual. Tr. 33. The Commissioner denied her claim initially on October 27, 2016. Tr. 95. Hyder requested a hearing, which was held before Administrative Law Judge ("ALJ") Christopher Van Dyck on August 2, 2018 in Fort Worth,

Texas, with Hyder and her attorney present. Tr. 46. The ALJ issued his unfavorable decision on January 22, 2019, finding that Hyder was not disabled. Tr. 16.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Hyder had not engaged in substantial gainful activity since November 25, 2015, the alleged disability onset date. Tr. 22. At step two, he determined that Hyder had the severe impairments of obesity, fibromyalgia ("FM"), hypertension, anemia, migraine or tension headaches, anxiety, and depression. *Id.* He found that Hyder had moderate limitations in all four "paragraph B" categories: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Tr. 25-26. At step three, the ALJ found that Hyder's impairments did not meet or medically equal two of the "marked" impairments listed in 20 C.F.R. Pt. 404(p). Tr. 26. In particular, he concluded that Hyder retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with excepted limitations of no climbing ladders, ropes, or scaffolds. Tr. 26-27. At step four, the ALJ determined that Hyder was unable to perform any past relevant work, which included being a teacher aide, nurse assistant, and a bus monitor. Tr. 32. At step five, the ALJ determined that there were a significant number of jobs in the national economy that Hyder could perform, so a finding of "not disabled" was appropriate. Tr. 33-34.

The Appeals Council denied review on September 19, 2019. Tr. 5. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's

RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

III.    **ANALYSIS**

Hyder raises two issues on appeal. She claims that the ALJ failed to (1) fully consider all of her vocationally significant impairments in determining her RFC, and (2) include significant functional limitations in the ALJ's hypothetical question to the vocational expert witness ("VE"). ECF No. 12 at 9.

A.    **Substantial Evidence Supports the ALJ's RFC Determination.**

Hyder first argues that the ALJ did not consider all of her vocationally significant impairments. *Id.* at 4. She contends that he did not properly consider her migraine headaches, anxiety, and depression in the RFC determination. *Id.* at 4-7. Specifically, she alleges that the ALJ's RFC is deficient because it did not include the effects that her migraine headaches had on her ability to work. *Id.* at 6. These effects included pain that required her to lie down in the dark and a frequency of one headache a week. *Id.* Hyder also contends that the RFC failed "to incorporate any limitations which the Commissioner deems to be consistent with a limitation in the ability to adapt or manage one's self" regarding her anxiety and depression. ECF No. 14 at 2.

In response, the Commissioner argues that the record does not support Hyder's complaints of "disabling impairments" and that medical examiners did not find her impairments to be as debilitating as she claimed them to be. ECF No. 8 at 8. The Commissioner contends that Hyder's daily activities, such as driving, shopping online, managing her finances, and doing household chores, further establish that her migraine headaches and anxiety are not as limiting as she asserts. *Id.* at 11.

By definition, a claimant's RFC is the most the claimant can still do despite her impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). "The responsibility for determining a claimant's RFC lies with the ALJ . . . [and] the ALJ must discuss

the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence." *Ewing v. Colvin*, No. 4:13-CV-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990); SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). "The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Nor must the ALJ expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 404.1545.

    In determining physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* § 404.1545(b). In determining mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* § 404.1545(c). The ALJ uses the "paragraph B criteria" to rate the degree of the claimant's mental limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a; *see id.* Part 404, Subpart P, Appendix 1.

Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 404.1545(d).

When the claimant alleges subjective complaints of pain, objective evidence must corroborate these allegations. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). Pursuant to SSR 96-7p, an ALJ assessing a claimant's allegations of symptoms such as pain or fatigue must conduct an objective-subjective, two-step analysis. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008). In the first, objective, step, the ALJ must determine whether there is an impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* If the ALJ identifies an impairment at step one, then the ALJ proceeds to the second, subjective, step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* at 459. This requires a credibility finding regarding the applicant's claims about symptoms. *Id.* Further, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024. As will be shown below, the ALJ properly considered all of Hyder's functional limitations.

i.    *The ALJ Properly Considered Hyder's Migraine Headaches.*

Hyder alleges that the ALJ failed to consider her migraine headaches in reaching his RFC determination. She asserts that her headaches interfere with her ability to do daily tasks such as lifting, sitting, walking, and talking and that nothing relieves her pain. Tr. 27. Specifically, she contends she has a migraine headache at least once a week that causes her to have to lie down in a

dark room for the entire day. ECF No. 12 at 4. She further alleges that her migraine headaches are getting worse as she is now becoming sensitive to light and sound, along with becoming nauseated when the headache begins. *Id.* at 5. The Commissioner argues that the record reflects that Hyder experiences "infrequent headaches when she took her preventative medication as prescribed." ECF No. 13 at 12. Further, the Commissioner argues that Hyder did not take her medication as prescribed and did not obtain an eye examination as her primary care physician recommended. *Id.* at 10.

While Hyder testified to the level of pain and limitations on activities that her migraine headaches caused, she did not support her evidence of subjective complaints with objective medical evidence in the record that demonstrates that her chronic pain limits her ability to perform work. The ALJ identified the proper legal standards, stated the parameters of the objective-subjective, two-step analysis he was required to undertake, and proceeded in compliance with the proper legal standards. Tr. 27-32. After considering the evidence, the ALJ determined that Hyder's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms at step one. Tr. 28. However, he found that Hyder's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. *Id.* To support this determination, the ALJ considered Hyder's complaints of pain from her migraine headaches and pain from her other impairments, but ultimately concluded Hyder's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. Tr. 28-32. Nevertheless, the ALJ still considered Hyder's unsupported allegations of pain and the resulting limitations from her migraine headaches in determining that she retained the ability to perform light work with minor limitations such as no climbing ladders. Tr. 33.

Importantly, substantial evidence in the record supports the ALJ's determination that Hyder could perform light work on a sustained basis. The ALJ evaluated Hyder's migraine headaches under the neurological listings and determined that the medical evidence provided did not support listing-level severity. Tr. 25. He found that with preventative medication, Hyder's migraine headaches became infrequent, despite her claims of having them weekly. Tr. 31. He also considered the statements made by one of Hyder's primary care providers, Amara Emenkie, M.D., who found it difficult to believe that Hyder's pain level was a "10/10" yet she appeared comfortable and chewing gum during the visit. Tr. 25, 560. Further, he found that Hyder did not comply with her medical providers' instructions to take her medication, did not obtain an eye exam as recommended, and frequently requested Tramadol, a prescribed controlled substance, from each of her physicians, who all subsequently denied her requests. Tr. 29.

Hyder has not shown that the ALJ's RFC finding is not based on credible evidentiary choices or medical findings. Instead, she argues that other evidence in the record supports her assertion that she is not capable of the demands of unskilled work due to her migraine headaches. *See, e.g.*, ECF No. 16 at 14–18. Hyder's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-CV-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted,* No. 4:15-CV-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016). Hyder's disagreement with the ALJ's RFC finding does not carry her burden of establishing that no substantial evidence supports the ALJ's determination. As a result, reversal of the ALJ's decision is not required on this point.

ii.    *The ALJ Properly Considered Hyder's Depression and Anxiety.*

Next, Hyder alleges that the ALJ did not correctly consider her depression and anxiety in determining her RFC. She asserts that these conditions interfered with her ability to remember, concentrate, follow instructions, and understand. ECF No. 12 at 9. She states that she can only pay attention for twenty minutes at a time and that she believes people are after her. Tr. 28. She further contents that she is unable to "respond to demands, adapt to changes, set goals, make plans independently, maintain hygiene and attire appropriate to a work setting, or to take appropriate precautions with regard to normal hazards." ECF No. 12 at 7. The Commissioner responds that the ALJ accounted for these limitations in the FCR as he found that she has "moderate limitations" in adapting and managing herself. Tr. 25-26.

The record reflects that the ALJ considered Hyder's depression and anxiety and found that she has a moderate limitation under the "paragraph B" criteria. Tr. 25-26. In reaching his determination, the ALJ considered the opinions of those who treated Hyder at the mental health clinic she attended and the opinions of the state agency psychological consultants. Tr. at 25-26, 107, 710. Those mental health professionals and state agency consultants agreed that Hyder had moderate limitations, but that she could "understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings." Tr. 24-26, 31, 110. Further, the ALJ found that Hyder's claims that anxiety limited her from being around people was inconsistent with her regular church attendance. Tr. 25-26. The ALJ also considered Hyder's various physicians' treatment notes that showed Hyder claimed to "be doing fine" and had unremarkable mental status examinations. Tr. 30-31. However, despite these inconsistencies in the

medical record, the ALJ considered Hyder's testimony and limited her to simple tasks with social restrictions. Tr. 26-27.

As noted previously, Hyder's disagreement with the ALJ's RFC finding and reference to conflicting evidence do not carry her burden of establishing that no substantial evidence supports the ALJ's determination. As a result, reversal of the ALJ's opinion is not required on this point.

"The record indicates that the ALJ used the medical information provided by [Hyder] to determine [her] residual functional capacity for work[; u]nder the regulations and [Fifth Circuit] case law, the determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Because substantial evidence in the record supports the ALJ's RFC determination, he did not err as to this issue.

## II.     The ALJ's Hypothetical Question to the VE was Not Defective.

Hyder argues that the ALJ's hypothetical question to the VE was defective and cannot support the ALJ's step five conclusion. ECF No. 12 at 9. She notes that the ALJ found that she has moderate difficulties in all the "paragraph B" criteria, but did not incorporate into his hypothetical any limitations concerning her migraine headaches and lack of concentration, persistence, and ability to adapt to changes caused by her anxiety and depression. *Id.* at 7. Specifically, Hyder alleges that she "has headaches on a weekly basis, which last for several hours to as much as all day," which leads to her being unable to "perform the occupations relied upon by the ALJ at step 5 of the sequential evaluation of disability." ECF No. 14 at 5. To support her claim, she points to the VE's testimony that an individual absent from work one day per week consistently, would not be able to sustain the occupations that the ALJ relied on. *Id.*

In response, the Commissioner argues that the hypothetical question properly included all of the limitations that the ALJ accepted. ECF No. 13 at 17. The Commissioner further argues that he met his burden of proof at step five by establishing there are other occupations in the national economy that Hyder could perform, such as a garment bagger, cleaner, housekeeper, and smalls item inspector. *Id.* Lastly, the Commissioner contends that Hyder did not meet her burden of proof that she could not perform the alternate work the VE identified and therefore, substantial evidence supports the ALJ's decision. *Id.* at 18.

At step five, the Commissioner must show "that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). In cases in which the ALJ cannot rely on the Medical-Vocational Guidelines to determine disability, "the ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citation omitted).

Under the test established in *Bowling v. Shalala* by this Court:

> When an ALJ bases a determination of non-disability on the testimony of a [VE] in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Detwiler v. Astrue*, No. 5:10-CV-00194-BG, 2012 WL 569188, at *4-5 (N.D. Tex. Jan. 19, 2012), *rec. adopted,* 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). Neither defect is present here.

Additionally, "[t]he hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes." *Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, at *2 (5th Cir. June 18, 2001) (citing *Bowling*, 36 F.3d at 435). Moreover, "the limitations identified in the 'paragraph B' … criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). The ALJ is not required to include in his hypothetical questions a claimant's disabilities that he did not recognize. *See Martinez v. Chater*, 70 F.3d 1269, 1995 WL 696853, at *5 (5th Cir. Oct. 26, 1995) (citation omitted) (factors such as ability to exercise judgment, function independently and socially, and deal with work-related stress are not separate disabilities to be included in hypothetical questions).

The ALJ recognized some, but not all, of the limitations Hyder asserts. He noted Hyder's moderate level difficulties in the "paragraph B" criteria, such as understanding "simple instructions and tasks," and having "no more than occasional interaction with the public, coworkers, and supervisors." Tr. 68. The ALJ asked the VE the following hypothetical question, which quoted the limitations in the RFC:

> If you had someone with the same age, education, and work background as the claimant limited to light work except as follows. The claimant can frequently push and pull consistent with or within the weights provided for light exertion, can never climb ladders, ropers, or scaffolds. Can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Can frequently reach in the bilateral upper extremities. Mentally can understand, remember, and carry out simple instructions and tasks. With no more than occasional interaction with the public, coworkers and supervisors, could that individual sustain any of her prior work as performed or per the DOT? … Would there be any other work available within those restrictions?

Tr. 67-69. The VE determined that based on the limitations in the RFC, a person would be able to perform the work of a garment bagger, cleaner, housekeeper, and small item inspector. Tr. 68. The

ALJ then asked the following second hypothetical question, which addressed the limitation that Hyder alleges to have:

> And let's assume that in an individual in addition to hypothetical one would be absent from work one day per week consistently. Would that person be able to sustain the work you identified?

Tr. 68-69. In response, the VE concluded that a person would not be able to sustain the previously identified work or any other work within the confines of the hypothetical as modified. Tr. 69. Hyder argues that the VE's answer to the second hypothetical undercuts the ALJ's decision, but ALJ did not agree with Hyder's allegations of the severity of her migraine headaches, as he determined they were not supported by the medical evidence in the record. Tr. 28. The ALJ determined that Hyder "retains the capacity to understand, remember, and carryout simple instructions and tasks involving occasional interaction with the public, coworkers, and supervisors." Tr. 32.

The hypothetical question reasonably incorporated the mental limitations that the ALJ recognized. A limitation to understanding simple tasks and instructions incorporates Hyder's difficulties with lack of concentration, persistence, and ability to adapt to changes. A limitation of occasional interaction with coworkers and supervisors addresses Hyder's difficulties with social interaction caused by her anxiety and depression. Additionally, the ALJ did address Hyder's alleged limitations due to her migraine headaches, as seen by the second hypothetical question asked. Tr. 68-69. Nevertheless, he determined that the credible medical record did not support this limitation, and he did not include it in his RFC determination. Tr. 25. Hyder contends that by not including this, the hypothetical is defective. ECF No. 14 at 5. However, part one of the *Bowling* test "only addresses whether the ALJ's hypothetical included all of the limitations in the RFC" and the ALJ is not required to include limitations in the RFC that he does not recognize. *Mielke v. Saul*,

No. 4:19-cv-00567-O-BP, 2020 WL 4434911, at *5 (N.D. Tex. Aug. 3, 2020); *see Gardner*, 2001 WL at *2.

Here, the hypothetical question reasonably incorporated all of Hyder's limitations that the ALJ recognized. The ALJ presented the VE with Hyder's RFC, which he determined based upon the medical opinions in the treatment record. As discussed above, the RFC was based upon substantial evidence, including Hyder's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. Even though the ALJ did not specifically reference Hyder's migraine headaches, anxiety, and depression in his questioning, he included them in his RFC finding. Tr. 26-32. Hyder has not shown that the ALJ's RFC finding is not based on credible evidentiary choices or medical findings.

Accordingly, notwithstanding the VE's subsequent vocational opinion, the ALJ sufficiently incorporated all disabilities and impairments he recognized in his hypothetical question to the VE. As a result, the ALJ's hypothetical question was not materially vague or misleading. Because there is not a "significant discrepancy . . . between the limitations included in the hypothetical question posited to the VE and the limitations the ALJ found in his decision," the ALJ did not commit reversible error on this point. *Ellis v. Astrue*, No. 7:09-CV-70-O-BF, 2010 WL 3422872, at *5 (N.D. Tex. July 27, 2010).

Additionally, Hyder's attorney did not raise this argument before the ALJ during the hearing when he was "'afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question (including additional disabilities . . . recognized but omitted from the question)' such that the hypothetical question was proper. . . ." Tr. 69; *Bordelon v. Astrue*, 281 F. App'x 418, 423, n.7 (citing *Bowling*, 36 F.3d at 436); *see also Monroe v. Shalala*, 55 F.3d 633, 1995 WL 313965, at

*7 (5th Cir. May 5, 1995) ("If the claimant is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, there is no reversible error."); *but see Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (an incomplete hypothetical is not automatically saved solely because a claimant fails to point out its deficiencies at the hearing). Instead, Hyder's attorney only cross-examined the VE about the frequency of having to "push or pull within the constraints of the weights of light work," limitations in standing and walking to two hours a day, and "transferable skills for the past relevant work to sedentary occupations." Tr. 69-72. For this additional reason, Hyder's challenge to the ALJ's hypothetical question to the VE is unfounded, and reversal on this basis is not required.

## III.    CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Hyder has not shown that reversal of the decision is required, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual

findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

   **SIGNED** August 25, 2020.

               Hal R. Ray, Jr.
               UNITED STATES MAGISTRATE JUDGE